# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | | |
|---|---|---|---|
| MARY E. RIED, | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No.: | 04 C 6605 |
| | ) | | |
| vs. | ) | Judge: | Hon. Judge Joan H. Lefkow |
| | ) | Magistrate: | Hon. Judge Morton Denlow |
| SWIFT GIFT, LTD. | ) | | |
| | ) | | |
| Defendant. | | | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of Mary E. Ried ("Ried") for relief from the court's March 24, 2005 order dismissing her case for want of prosecution. For the reasons stated below, the court denies Ried's motion for relief from judgment.

## BACKGROUND

On October 13, 2004, Ried filed this action against Defendant Swift Gift, Ltd. ("Swift") alleging two claims of sexual harassment. On February 28, 2005, both parties failed to appear at a status hearing set for this matter. The court issued an order resetting the status hearing for March 24, 2005 and giving fair warning that if the parties failed to appear at the rescheduled status hearing, the case would be dismissed. *See Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) (requiring district courts to provide an express warning before dismissing a suit for want of prosecution). On March 24, 2005, counsel for Swift was present for the rescheduled status hearing, but neither Ried nor her counsel of record appeared. Consistent with the court's prior order, Chief Judge Kocoras dismissed the case for want of prosecution. Judgment was entered against Ried and Ried's claims were dismissed with prejudice.

Prior to the dismissal of the case, Ried was represented by Lawrence Byrne ("Byrne") of Byrne, Nadborne & Associates, while Swift was represented by Howard Marks ("Marks"). Sometime between January 15, 2005 and February 15, 2005, Byrne and Marks participated in Rule 37 discussions regarding Ried's failure to respond to Swift's written discovery requests. During these discussions, Byrne informed Marks that he was referring the case to Carl Boecherer IV ("Boecherer") of Boecherer & Associates. Although Byrne ceased participating in Ried's representation, he never moved to withdraw as counsel.

After speaking with Byrne, Marks contacted Boecherer in an attempt to reach an accord regarding the outstanding discovery responses. Two weeks later, having not received discovery responses from either Byrne or Boecherer, Marks notified both Byrne and Boecherer in a letter dated February 23, 2005 of Swift's intent to file a motion to compel pursuant to Fed.R.Civ.P. 37.

Boecherer replied in a letter dated March 2, 2005 that it was his understanding that the parties had agreed to refrain from pursuing discovery pending Boecherer's substitution in the case. Boecherer further represented that he intended to file a motion to substitute as counsel by March 16, 2005 and to provide discovery responses by April 4, 2005. Despite these representations, Boecherer did not move to substitute, and in a letter dated March 22, 2005, Marks reaffirmed his intention to move to compel Ried's discovery responses.

As stated, the case was dismissed on March 24. Unaware that the case had been dismissed, however, Boecherer met with Ried on March 25, 2005 and was retained to represent her. The following day, Boecherer's wife went into labor. She gave birth to their son on March 30, 2005. Boecherer immediately took a leave of absence from his practice and began providing full-time care to his newborn son. As a consequence, Boecherer represents that he did not

become aware of the March 24, 2005 status hearing and dismissal for want of prosecution until May 18, 2005 during an online review of the docket. Because he had not returned to his practice full-time and because he was preparing for a trial in June of 2005, Boecherer maintains that he was unavoidably delayed in seeking relief from the judgment for two months.

On July 11, 2005, Boecherer filed a combined motion to vacate the dismissal for want of prosecution and for leave to substitute as counsel. Chief Judge Kocoras denied the combined motion without prejudice because Boecherer had not filed an appearance. On July 15, 2005, Boecherer filed a motion for leave to file an additional appearance. Chief Judge Kocoras initially granted the motion, but on August 25, 2005, on the court's own motion, the court vacated the August 11, 2005 order allowing Boecherer's appearance. Chief Judge Korcoas instead granted Boecherer leave to appear for the limited purpose of presenting the present motion, which was filed on August 11, 2005.

## DISCUSSION

In her opening memorandum, Ried fails to specify the subsection or subsections of Rule 60(b) on which she was relies. (Pl.'s Mot. For Relief From J. ¶ 19). In her reply brief, however, Ried clarifies that she seeks to set aside the dismissal for want of prosecution pursuant to Rule 60(b)(1). (Pl.'s Reply In Supp. of Pl.'s Mot. For Relief From J. 1).

Rule 60(b)(1) authorizes courts to relieve a party from a final judgment for reasons of "mistake, inadvertence, surprise, or excusable neglect." *See* Fed.R.Civ.P. 60(b)(1). Ried bears the burden of showing (1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a colorable claim. *See Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994); *see also United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d

1311, 1313 (7th Cir. 1995). Vacation of a default judgment pursuant to Rule 60(b) is "an extraordinary remedy and is granted only in exceptional circumstances." *United States* v. *One 1979 Rolls-Royce Corniche*, 770 F.2d 713, 716 (7th Cir.1985).

A. **Good Cause**

Swift argues that Ried cannot demonstrate good cause because she failed to provide an explanation from Byrne, the attorney of record at the time of dismissal, regarding his failure to appear at two consecutive status hearings. It is plain enough that Byrne failed to appear at the status hearings because he assumed that Boecherer would appear on Ried's behalf. As early as mid-February, Byrne notified Marks that he was referring the case to Boecherer and, on March 2, Boecherer advised both Byrne and Marks of his intention to meet with Ried, file a motion to substitute as counsel, and undertake the full representation of Ried by March 16.

Setting aside its objection to the absence of an affidavit from Byrne, Swift still maintains that Byrne's carelessness cannot constitute excusable neglect. In support of its argument, Swift cites *Cline* v. *American Airlines*, 1989 WL 157281 (N.D. Ill. Dec. 18, 1989), which holds that in order to qualify as "excusable neglect," an attorney's omission must have been attributable to some kind of "exceptional circumstance," and not mere carelessness or negligence. Since *Cline*, however, the Supreme Court subsequently broadened the definition of "excusable neglect." *See Pioneer Inv. Servs. Co.* v. *Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see also Matter of Singson*, 41 F.3d 316 (7th Cir. 1994) (acknowledging a departure from pre-*Pioneer* case law). Specifically, *Pioneer* held that for purposes of Rule 60(b)(1), "excusable neglect" could include omissions caused by carelessness, negligence or mistake. *See Matter of Bulic*, 997 F.2d 299, 302 (7th Cir. 1993) (acknowledging that *Pioneer*

established a new and broader definition of "excusable neglect"). Thus, the fact that Byrne's failure to appear at the status hearings was caused by simple carelessness, not some extraordinary circumstance beyond his control, does not preclude the court from finding that Byrne's conduct was excusable, warranting relief under Rule 60(b)(1).

To determine whether Byrne's carelessness constitutes "excusable neglect," the court must consider "all relevant circumstances" surrounding Byrne's failure to appear at the status hearings, including (1) Byrne's reason for failing to appear; (2) the potential impact of Byrne's carelessness upon the judicial proceedings; (3) the danger of prejudice to Swift should Byrne's neglect be deemed excusable; and (4) whether Byrne acted in good faith. *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489.

Byrne's apparent reason for failing to appear at the status hearings is hardly compelling. As attorney of record on March 24, Byrne had a duty to appear in court. *See* L.R.LR83.17. ("Once an attorney has filed an appearance form pursuant to LR83.16, that attorney is the attorney of record for the party represented for all purposes incident to the proceeding in which the appearance was filed. The attorney of record may not withdraw, nor may any other attorney file an appearance on behalf of the same party or as a substitute for the attorney of record, without first obtaining leave of court . . . ."). Moreover, the customary and recommended, if not expected, practice in transferring a case to another attorney is to appear before the court to withdraw as counsel on the same day that new counsel moves to file an appearance. If Byrne had followed this protocol, he would have attended the status hearings despite his assumption that Boecherer would appear on Ried's behalf. Indeed, to this day, Byrne has not sought leave to

withdraw.[1] Consequently, the court neither condones Byrne's failure to appear nor hesitates to state that his conduct falls well below the court's expectations of a member of the bar.

That having been said, neither Swift nor the court has been prejudiced by Byrne's carelessness, and neither Swift nor the court would likely be prejudiced should the court vacate the dismissal in this case. First, since this case did not progress past the answer, vacating the dismissal would not adversely affect any judicial proceedings. Second, because the case was instituted a little over a year ago, it is unlikely that any necessary or relevant information would have been lost. The fact that the alleged harasser no longer is employed by Swift does not alter this conclusion. If the court reinstates the case, Swift can readily obtain the testimony of its former employee by issuing a subpoena. Ultimately, were the court to vacate the dismissal for want of prosecution, Swift would merely be required to defend the case on its merits as it was prepared to do before the dismissal was entered. In light of the Seventh Circuit's "well-established policy favoring a trial on the merits over a default judgment," *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984), it would be appropriate to require them to do just that.

## B.  Quick Action to Correct the Default

Rule 60(b), however, also provides that a motion for relief from a judgment by reason of mistake, inadvertence, excusable neglect, etc., "shall be made within a reasonable time," but "not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b). Ried filed her motion for relief under 60(b)(1) on August 11, 2005, approximately four-

---

[1] Ried's motion is presented by Boecherer and includes a request for leave for Byrne to withdraw. Obviously, mischief is made possible by such a motion. It is also noted that an attorney named Gail M. Hercule remains of record on the docket.

6

and-a-half months after the case was dismissed against her. Thus, Ried was within the one-year prescribed by Rule 60(b)(1). The Seventh Circuit has stated, however, that the one-year cap is an "extreme outer limit," and repeatedly cautioned that "even a motion filed within a year will be rejected as untimely if not made within a reasonable time." *Berwick Grain Co. v. Illinois Dep't of Agric.*, 189 F.3d 556, 560 (7th Cir. 1999) (citations omitted); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986).[2] "What constitutes a 'reasonable time' ultimately depends on the facts of each case including the reason for delay, the practical ability of the litigant to have learned about the grounds of the judgment earlier, and the degree of prejudice to the other parties." *Kagan*, 795 F.2d at 610.

In this case, Boecherer, not Byrne, does the explaining. According to his affidavit, Boecherer first learned of the dismissal on May 18, 2005 during an online review of the case docket. Implicit in Boecherer's averment is an admission that he failed to inquire about the status of the case when he was first retained by Ried on March 25, 2005 and remained completely inattentive to the case for another two months. It is axiomatic that an attorney has an ongoing responsibility to inquire about the status of a case. *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (citation omitted). Furthermore, the correspondence between Marks and Boecherer, dated March 22, 2005, makes evident Swift's intentions to immediately file a motion to compel discovery responses. Thus, Boecherer had reason to believe a motion might be pending before the court. Yet, Boecherer neither responded to Marks' letter, informed him of his

---

[2] Indeed, courts have held that a party could not establish quick action to correct a default under Rule 60(b)(1) where they did not act until five weeks, *Jones*, 39 F.3d at 165, seven weeks, *Casio Computer Co. v. Noren*, 2001 WL 893813*5 (N.D Ill. Aug. 6, 2001), two months, *Chandler Leasing Corp. v. UCC, Inc.*, 91 F.R.D. 81, 84 (N.D. Ill. 1981), or three months, *Leadership Council for Metro. Open Communities, Inc. v. Quality Realty, Inc.*, 1999 WL 1046431 at *2-3 (N.D. Ill. Nov. 10, 1999), after the entry of default.

intention to take a leave of absence, nor made arrangements for the case in his absence. Boecherer's failure to conduct ordinary communication with opposing counsel is inexplicable in light of the parties' ongoing discovery dispute.

Boecherer's abandonment of this case likewise cannot be excused by the birth of his son. It is clear that "attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant. *Easley*, 382 F.3d at 698. As such, courts have not found "excusable neglect" when counsel's inability to act in a timely fashion was the result of an absence related to the birth of a child, *In re Wildflower Land Holding Assoc. Ltd.*, 34 B.R. 4, 5 (Bankr. M.D. Fla. 1983), the death of a sister and father, *Harrington v. City of Chicago*, 433 F.3d 542, 547-548 (7th Cir. 2006), or the death of a brother who was also counsel's law partner. *Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 61, 65 (1st Cir. 2001). While the court is sympathetic to the demands of child care and appreciates that the birth of a child is a disruptive event, there is no evidence that Boecherer was unaware that he would be absent from his practice upon the birth of his child. Boecherer's purported inability to monitor the litigation was due to circumstances that could have been reasonably anticipated and thus, his failure to act in a timely fashion is unreasonable.

Boecherer argues that his status as a sole practitioner and his preoccupation with another case also made it impossible for him to seek relief under 60(b)(1) for nearly two months after he first learned the case had been dismissed. The fact that an attorney is a sole practitioner is inadequate to justify relief under Rule 60(b)(1). *Lomas and Nettleton Co. v. Wiseley*, 884 F.2d 965, 967-968 (7th Cir. 1989); *Harrington*, 433 F.3d at 548. It is also widely accepted that a busy schedule does not excuse neglect. *See Harrington*, 433 F.3d at 548 (citing *United States v.*

8

*Dumas*, 94 F.3d 286, 289 (7th Cir. 1996); *Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 101 (1st Cir. 2003); *Hunt v. City of Minneapolis*, 203 F.3d 524, 528 n. 3 (8th Cir. 2000); *Baker v. Raulie*, 879 F.2d 1396, 1399-1400 (6th Cir. 1989); *Clinkscales v. Chevron v. U.S.A., Inc.*, 831 F.2d 1565, 1569 (11th Cir. 1987)). "Sole practitioner or not, [an attorney], as a member of the bar, had duties to his client[], to opposing counsel, and to the district court – not the least of which was respect." *Harrington*, 433 F.3d at 548 (citations omitted).

In sum, the explanations proffered by Boecherer for his inattentiveness to this litigation before and after he learned that the case had been dismissed relate to events that were planned and could hardly be a basis for failing to act quickly to correct the default. As a consequence, the four month delay between the dismissal of Ried's case and the filing of her motion for relief from judgment is unreasonable.

The court appreciates that the denial of relief from judgment imposes a harsh result upon Ried by precluding consideration of the merits of her case. But "[c]lients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396. "If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good." *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003). To the extent Ried believes her claim is meritorious (an issue on which the court expresses no opinion), she can pursue whatever remedies she may have against her counsel for failing to prosecute this suit in a competent manner.

## CONCLUSION

Based upon the foregoing reasons, Ried's Motion for Relief from Judgment [#13] is denied. Boecherer's motion to withdraw as attorney [#23] is granted. Gail M. Hercule and Lawrence W. Byrne remain counsel of record for Ried. Accordingly, Hercule and Byrne are instructed to serve a copy of this decision on Ried and to confer with Ried regarding her right to appeal this decision.

Dated: February 14, 2006

ENTER: _____

JOAN HUMPHREY LEFKOW
United States District Judge